## BESSIE HUTCHINSON v. BOHN E. FAWKES AND ANOTHER.[1]

December 10, 1920.

No. 21,964.

**Automobile—negligence of driver—liability of owner—charge to jury.**

The evidence warranted the instruction that appellant was responsible for the negligence of the one who, at appellant's request, drove an automobile on an errand that appellant had undertaken to render as a personal favor to another.

Action in the district court for Hennepin county to recover $5,500 for injuries caused by the negligent driving of defendant's automobile. The case was tried before Leary, J., and a jury which returned a verdict for $2,000. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, Bohn E. Fawkes appealed. Affirmed.

*Dille, Hoke, Krause & Faegre* and *R. F. Merriam,* for appellant.

*Bessesen & Bessesen* and *L. O. Rue,* for respondent.

HOLT, J.

The only question presented by this appeal is the ruling that the defendant and appellant, Bohn E. Fawkes, was responsible for the negligence of R. E. Boutell, who, in driving appellant's automobile, collided with a car in which plaintiff was riding. That Boutell's negligence resulted to plaintiff's damage in the amount awarded is not disputed.

Appellant contends that instead of his responsibility for the acts of

[1]Reported in 180 N. W. 116.

Boutell appearing as a matter of law, the contrary is so clear that the verdict cannot stand, but, if this is claiming too much, he asserts that. the evidence made his responsibility a jury question, and not one for the court.

On February 22, 1919, an officer of the Motor Corps of the National Guard requested appellant, also a member of the corps, to transport two other officers from the Union Depot in Minneapolis to the Lake Calhoun Aviation Field. A mail-carrying aeroplane was then approaching the city from Duluth, and the result of its trip was an object of interest to the military organization. Appellant signified his readiness to comply with the request, but, when the time arrived to go to the depot, something required his personal attention at his place of business, and he asked Mr. Boutell to go with appellant's car. Appellant is in the automobile business. Boutell is in his employ, selling automobiles on commission. He has no stated salary, or hours of work, and his movements are ordinarily not directed by appellant.

What took place between the two men relative to the transportation in question, came entirely from appellant, Boutell, and the officers. When called for cross-examination appellant testified, in substance, that he received a call a little after noon on the day in question from Officer Vivian "wanting a car to take Lieutenants Harrison and McIlvaney out to Calhoun;" that he sent Mr. Boutell with the car down to the Union Depot; that Boutell was his salesman and started out on this trip under appellant's direction. On being examined by his own attorney, he stated that Boutell happened to be at the place of business, and he, appellant, sent him with the car. The attorney then put the question to him whether he simply loaned the car and the driver to the officers, and he answered in the affirmative. Again, when asked by plaintiff's attorney whether he gave Boutell directions where to go, appellant's response was: "I told him to go down and get Lieutenant Harrison and take him out to the aviation grounds at Lake Calhoun. That is all." Boutell testified appellant "asked me if I had anything special to do that afternoon and I said I did not, and he said: 'Would you like to take a car then and drive down to the Union Depot and get a couple of boys and take them out to Calhoun to meet that aeroplane coming from Du-

luth?' I said: 'I would just as soon if I can take your car and there is nobody else to drive.' He said: 'All right.' " Appellant, when called to establish a defense, stated that Boutell was working on commission in selling automobiles and trucks for him, and did not act as his personal chauffeur. When asked what he said to Boutell the answer was: "Why, I don't recall but I simply asked him if he would not go down and as I remember, the call came in to me and I was busy, and I asked him if he would take the call for me. I was a member of the motor corps at that time." His attorney then put the question: "Was the request for the loan of only the car, or for a car and somebody to drive it?" Answer: "A car and driver." On cross-examination he stated he asked Mr. Boutell to take the car in place of himself and take the officers out, because appellant did not have time. The collision occurred on the way from the depot to the aviation ground.

We think the above resume of the testimony clearly and conclusively shows that appellant did not loan the car and driver to the officers so that they became responsible for the carelessness of the driver, nor did he loan the car to Boutell so that Boutell might render a personal favor to the officers. The true situation as reflected in the candid testimony of appellant himself is that he was appealed to for a service to his military comrades, that he undertook the task, and sent his employee to do it for him. He made it his business to furnish the requested transportation. There is no evidence that Boutell was interested in the motor corps or in any other organization connected with aviation or military problems. Both appellant and Boutell well understood that a wish expressed by the former to the latter was the same as a command. Appellant, and not Boutell, promised the transportation requested and he kept his promise. We do not believe the court usurped the function of the jury when holding that appellant was responsible for Boutell's negligent management of the car on the trip from the depot to the aviation field.

The order is affirmed.